

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-17-00444-CV

**IN THE INTEREST OF D.D.P.**, C.L.C., E.L.C., and J.M.J.

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2016-PA-00082
Honorable Charles E. Montemayor, Associate Judge Presiding

Opinion by:      Karen Angelini, Justice

Sitting:          Karen Angelini, Justice
                 Rebeca C. Martinez, Justice
                 Irene Rios, Justice

Delivered and Filed:  April 4, 2018

AFFIRMED

Appellant Janice C. appeals the trial court's order terminating her parental rights to her four children: sixteen-year-old D.D.P., fourteen-year-old C.L.C., ten-year-old E.L.C., and eight-year-old J.M.J. Janice C. argues on appeal that the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights is in her children's best interest. We affirm.

### BACKGROUND

On January 13, 2016, the Department of Family and Protective Services filed a petition for protection of a child, for conservatorship, and for termination in a suit affecting the parent-child relationship. At the bench trial on June 8, 2017, three witnesses testified: Isamu Takemoto, a legal

caseworker with the Department; Darren Eakles, a Bexar County juvenile probation officer; and Janice C.

Takemoto testified that the Department became involved in this matter when two of Janice C.'s children knocked on the doors of neighbors "stating that they were hungry." Janice C. was not at home, and the police were called. When Janice C. returned home, she was arrested for child abandonment. According to Takemoto, Janice C. was first offered Family Based Safety Services.[1] During this period, Janice C. was placed on probation for her pending child abandonment charge. However, Janice C. "continued to fail drug tests," and during a "random search by probation [officers]," officers "found a shotgun under [Janice C.'s] bed, which led to the children being removed." The underlying petition for termination was then filed, and Janice C. was ordered to comply with a family service plan.

Takemoto testified that Janice C. was then admitted to "Criminal Drug Court" and "went into in-patient [treatment] at Applewhite Recovery." Janice C. completed her program at Applewhite and was then placed on "work release by Drug Court." However, once Janice C. was released, she began having problems "a month or two" later. Takemoto testified Janice C. "did not report back" and "had a warrant out for her arrest twice." According to Takemoto, Janice C. repeatedly tested positive for illegal drug use. On October 26, 2016, Janice C. tested positive for cocaine. On December 5, 2016, she tested positive for cocaine again. On December 20, 2016, she tested positive for methamphetamines. On December 22, 2016, she tested positive for cocaine. On February 24, 2017, she tested positive for methamphetamines. On February 28, 2017, she tested positive for methamphetamines, cocaine, and amphetamines. On March 8, 2017, she tested

---

[1] Family Based Safety Services are services designed to "help avoid the need to remove the children from their homes– or make it possible for the children to return home–by strengthening the ability of families to protect their children and reducing threats to their safety." TEX. DEP'T OF FAM. & PROTECTIVE SERV., *Family Based Safety Services*, https://www.dfps.state.tx.us/Child_Protection/Family_Support/default.asp.

positive for amphetamines and methamphetamines. Takemoto testified that Janice C. was then "terminated from Drug Court for noncompliance."

According to Takemoto, Janice C. was currently incarcerated in jail. Takemoto testified that Janice C. had not complied with her family service plan. Due to Janice C.'s criminal involvement, she had not had many visits with her children and had not maintained housing or employment. Although Janice C. had engaged in some individual counseling through Drug Court, she did not complete the counseling. "[S]he stopped showing up, and she was arrested and put back into Bexar County jail." Takemoto testified Janice C. was not able to financially support her children and did not have family or any support system. Further, Janice C. did not demonstrate that she could live "a drug-free lifestyle." According to Takemoto, Janice C. had shown a pattern of behavior. Takemoto explained that before the filing of this case, Janice C. had had previous cases with the Department arising when two of her children, E.L.C. and J.M.J., had tested positive for cocaine at the time of their respective births. Both times, family based safety plans had left the children in the care of the maternal grandmother. Takemoto testified the maternal grandmother has since passed away.

Takemoto testified the three youngest children currently had a kinship placement, were "doing well," and had "bonded significantly with their current caregiver." Takemoto testified that they were in a safe and stable home, and that when she visited the home, she saw the children give the caregiver hugs and call her "grandmother." According to Takemoto, J.M.J. had said she did not want to leave her current placement. Takemoto explained that the current caregiver wishes to adopt the children, but would no longer be willing to be a placement if parental rights were not terminated. According to Takemoto, the current placement was concerned about the children's family members appearing at her home and had "no intention of [allowing Janice C. to see] the kids."

With respect to the oldest child, D.D.P., Takemoto testified that when the other children were removed from the home, D.D.P. was residing in a juvenile detention facility. He had been arrested for aggravated robbery and driving in a car with a weapon. Takemoto testified that on April 19, 2017, D.D.P. was released from juvenile detention, and at the time of trial, he had been a runaway for "about a month." Takemoto testified that she was concerned about D.D.P.'s involvement in criminal activities, explaining his lifestyle was "the same lifestyle that [the parents have] shown as well." Takemoto explained Janice C. was "a known member of . . . the Bloods," and the three fathers in the case were also members of gangs. Takemoto testified D.D.P. was following his parents' lifestyle as he was "a member of the ETG" or "East Terrorist Gangsters." According to Takemoto, D.D.P. had recently posted a photo on social media depicting "a lot of money, a bag of marijuana, wraps, and a drink." Takemoto testified that when she talked to D.D.P., D.D.P. told her that he had worked with his mother "for a while," and that ever "since he was two years old," his mother would bring him along and "he would drop packages off of [sic] the drugs." Takemoto testified that D.D.P. had been exposed to drug culture his entire life. Thus, she believed it was in the best interest to terminate Janice C.'s parental rights because Janice C. had not shown that she could maintain a safe and appropriate home or refrain from criminal activity.

The second witness to testify was Darren Eakles, a Bexar County juvenile probation officer. Eakles had been assigned to D.D.P.'s case since January 2016. According to Eakles, while at the juvenile detention facility, family members "are placed on a contact list and are given the opportunity to meet with the child and counselor for at least one hour long counseling session" once a week. Janice C. was placed on the contact list but never engaged in family therapy with D.D.P. Eakles testified he met with D.D.P. many times, and D.D.P. admitted to being a member of the East Terrorist Gangsters, which are "affiliated with the Bloods." Eakles testified that when D.D.P. was first placed in juvenile detention, D.D.P.'s main concern was whether he would

complete his program at juvenile detention at the same time his mother completed her rehabilitation. D.D.P. was concerned about what would happen if he completed his program first. According to Eakles, later in the process, D.D.P. began to lose hope that he would be placed with his mother after he finished his program at juvenile detention.

The final witness, Janice C., testified that she met D.D.P.'s father when she was sixteen years old, and became pregnant and gave birth at seventeen years old. Janice C. raised her "kids on [her] own," but admitted J.M.J.'s father helped her with cooking and looking after the children. However, he did not provide any financial help. Janice C. claimed she and J.M.J.'s father did not use illegal drugs around the children but went "out" to use. Janice C. testified, "[T]he kids usually were at home with my mother or my grandmother before she passed."

Janice C. testified she was at Applewhite Rehab for about four-and-a-half months and did well while she was in treatment. When she left, she had to complete Drug Court, find employment and stable housing. She testified that she got a job at Toyota but "had to quit it because of Drug Court, because they would not work around [her] schedule." When Janice C. failed to complete Drug Court because of her repeated positive tests for drug use, she was incarcerated again. Janice C. believed she would be released soon and testified she was willing "to go in-patient again." According to Janice C., she had given the Department the name of the children's current caregiver. She had no concerns about their current placement. Janice C. admitted that she could not provide her children with housing.

After hearing the evidence, the trial court terminated Janice C.'s parental rights pursuant to subsections (D), (E), (N), (O), and (P) of section 161.001(b)(1) of the Family Code. The trial court also found that it was in the children's best interest for Janice C.'s parental rights to be terminated.

**BEST INTEREST OF CHILDREN**

Parental rights may be terminated only upon proof of clear and convincing evidence that (1) the parent has committed an act prohibited by section 161.001(b)(1) of the Texas Family Code, and (2) termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2017). On appeal, Janice C. argues that the evidence is legally and factually insufficient to support the trial court's best interest finding. We review the legal and factual sufficiency of the evidence to support the trial court's best interest finding under the standards enunciated in *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009).

Under Texas law, there is a strong presumption that the best interest of a child is served by keeping the child with a parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). And, in determining whether the child's parents are willing and able to provide the child with a safe environment, a court should consider the factors set out in section 263.307 of the Family Code. *See* TEX. FAM. CODE ANN. § 263.307(b) (West Supp. 2017). In addition to these statutory factors, in considering the best interest of the children, a court may also consider the nonexclusive list of factors set forth by the Texas Supreme Court in *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). *See In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013). The *Holley* factors are neither all-encompassing nor does a court need to find evidence of each factor before terminating the parent-child relationship. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Additionally, in determining whether termination of the parent-child relationship is in the best interest of a child, a court may judge a parent's future conduct by his past conduct. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

Janice C. argues that even though she was incarcerated, she had demonstrated she could provide her children with a safe environment because she had given the name of the children's current placement to the Department. For support, she cites *In re D.S.A.*, 113 S.W.3d 567, 573

(Tex. App.—Amarillo 2003, no pet.), where, *in dicta* and in reference to termination on the basis of subsection (N),[2] the Amarillo Court of Appeals noted that not every person in prison is unable to provide a child with a good environment. "Indeed, it is quite conceivable that one in prison may still be able to do so by, at the very least, leaving the ward in the capable hands of a relative, friend or spouse." *Id*. "[T]he incarcerated parent may be able to work through surrogates, such as relatives, spouses, or friends to fulfill that obligation." *Id.* "And, if he so arranges and those surrogates agree to the arrangement, it is hard to deny that the parent has taken steps to provide or effectively provided a safe environment." *Id.* at 573-74. "To suggest otherwise would be to suggest that military personnel cannot provide for their children because they may be assigned overseas to combat duty." *Id.* at 574. However, while the court of appeals conceived of this possibility, in looking at the facts of its particular case, the court determined that legally and factually sufficient evidence supported termination of the incarcerated parent's rights on subsection (N) grounds. *Id.* The court of appeals then determined the evidence was also legally and factually sufficient to support the trial court's best interest finding. *See id.*

Similarly, here, there is legally and factually sufficient evidence to support the trial court's best interest finding. Janice C. did not show she could provide her children with a safe environment; merely providing the Department with the name of a possible kinship placement does not equate to arranging a surrogate to meet her parental obligations. Further, the evidence in this case was that the kinship placement would not continue if Janice C.'s parental rights were not terminated, because the kinship placement wanted no involvement with Janice C. or her family.

---

[2] Subsection (N) of section 161.001(b)(1) provides that parental rights may be terminated if a parent has "constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department" "for not less than six months and: (i) the Department has made reasonable efforts to return the child to the parent; (ii) the parent has not regularly visited or maintained significant contact with the child; and (iii) the parent has demonstrated an inability to provide the child with a safe environment." TEX. FAM. CODE ANN. § 161.001(b)(1)(N) (West Supp. 2017).

Additionally, Janice C.'s history of illegal drug abuse, including involving her eldest child in her illegal drug trade at a very young age, shows her lack of parental abilities or her ability to maintain a safe environment for her children. Indeed, two of her children tested positive for drugs at the times of their respective births. A third child, her eldest, is a member of criminal gang and is now a runaway. He learned this behavior from Janice C., who is also a member of a criminal gang. Additionally, Janice C. has no financial means to provide for her children or provide them with a safe and stable home. In contrast, the current placement is meeting the needs of the three youngest children and wishes to adopt them. These three children are doing well in their present placement and have bonded with the current placement.

In looking at all the evidence in the light most favorable to the trial court's finding, we hold that the trial court could have reasonably formed a firm belief or conviction that termination of Janice C's parental rights was in the children's best interest. *See In re J.O.A.*, 283 S.W.3d at 344. Further, in considering the entire record, including any disputed evidence, we conclude the evidence is factually sufficient to support the trial court's finding that termination of Janice C.'s parental rights was in the children's best interest. *See id.*

We therefore affirm the trial court's order terminating Janice C.'s parental rights.

Karen Angelini, Justice